UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA R. MONCEL, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | )   CAUSE NO. 1:12-cv-1720-WTL-DML |
| | ) |
| SULLIVAN'S OF INDIANA, INC., | ) |
| | ) |
|   Defendant. | ) |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (dkt. no. 49). This motion is fully briefed,[1] and the Court, being duly advised, **GRANTS** the motion for the following reasons.

### I.    STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party

---

[1] The Plaintiff is proceeding *pro se* in this case and was provided with the notice required by Local Rule 56-1(k). *See* dkt. no. 51.

bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.     BACKGROUND

The facts that follow are those taken in the light most favorable to the Plaintiff, Lisa R. Moncel.

Defendant Sullivan's of Indiana, Inc. ("Sullivan's") owns and operates a restaurant on the Northside of Indianapolis, Indiana. On July 24, 2010, Sullivan's hired Moncel to work in its restaurant. During her tenure at Sullivan's Moncel worked as a bartender, server, and food runner. Moncel had various supervisors while employed at Sullivan's including: 1) Kim Vanek, Service Manager; 2) John Stanley, General Manager; and 3) Michael Christiansen, Regional Chef Manager.

While employed at Sullivan's, Moncel was paid $2.13 per hour as well as any tips she received directly from her customers. Sullivan's also had a tip-sharing policy that required servers to contribute a certain percentage of the tips they received to a "tip pool," and then those tips were distributed to hosts, bussers, food runners, and bartenders. Servers were required to complete a form at the end of their shift that documented the amount of tips they earned and their contributions to the tip pool. These forms were then reviewed by managers for any discrepancies. Unfortunately, the tip pool system did not always function as intended, and there were many shifts where Moncel did not receive her proper allocation of tips; at times she received no tip allocation at all.

In addition to the problems with the tip pool system, Moncel experienced other difficulties while working at Sullivan's. During the course of her employment, she was formally

disciplined five times for various reasons: poor performance, guest complaints, arriving late to work, etc. Further complicating matters was the fact that Moncel did not care for her supervisors. Moncel felt that Vanek intentionally engaged in acts of bullying, intimidation, and psychological isolation against female employees which led to a hostile working environment. Other managers, including Christiansen and Stanley, engaged in similar behavior, screaming and yelling at employees in a degrading manner.

Perhaps worst of all, however, was that Moncel and other female employees were sexually harassed while employed at Sullivan's. The harassment started in July 2011, when Tony, a co-worker who worked in the kitchen, grabbed and groped her breasts and buttocks and simulated sexual acts by rubbing his pelvic area against her. He also made unwanted sexual comments to her such as "I want to taste you." This behavior continued until Moncel's employment ended. Tony also touched other female employees inappropriately. Similarly, Moncel and other female employees were sexually harassed by Kenny Young, an assistant chef at Sullivan's.[2] Young would throw food objects—i.e., capers—down the shirts and/or blouses worn by the female servers and food runners. Moncel estimates that this happened to her approximately five times during the course of her employment, but alleges that it happened repeatedly to all female employees. In addition to this, one time Young held a piece of sausage near his groin area and swung it around, asking Moncel, "do you like it?" Young would also massage female employees and touch them inappropriately. Furthermore, Moncel observed Christiansen hug Danielle Hester, her co-worker, and lay his head on her breasts. She also heard

---

[2] It is unclear to the Court if Young was in a position of management. Sullivan's classifies Young as a sous chef, and similarly, Moncel classifies him as an assistant chef in her Amended Complaint. Yet, in her deposition, Moncel classifies Young as "[m]anager, sous chef." Pl.'s Dep. at 29. Nevertheless, it does not appear to the Court that Young had any supervisory role over Moncel, who did not work in the kitchen.

Christiansen tell Katie Hoskins, another co-worker, that he was having dreams about her. Moncel opines that the uniform Sullivan's management required females to wear—V-neck or scoop-neck shirts, above-the-knee skirts, and two-inch-heeled shoes—contributed to the sexually-charged atmosphere.

For its part, Sullivan's had a sexual harassment policy in place that instructed employees to immediately report any harassing behavior to management.[3] Sullivan's also had a hotline that employees could use to complain anonymously. The sexual harassment policy and a poster informing employees of the hotline were posted on a bulletin board in the restaurant in addition to being contained in the Employee Handbook. Nevertheless, while Moncel knew about the policy and the hotline, she did not formally inform Sullivan's management that she was being sexually harassed because she was afraid of getting fired. Beginning in early 2012, however, Moncel began conducting her own research into employment law, and she became aware of certain protections that Title VII provided to her.

During the course of Moncel's employment, the employees at Sullivan's created a Facebook page entitled "Shift Swap" where they could easily communicate with others regarding scheduling conflicts and work with each other to resolve them. This page quickly turned into a place to vent about the negative and hostile environment at Sullivan's. As a result, someone suggested they limit who was allowed in the group and use it only for scheduling purposes.[4] On or around April 11, 2012, this person posted the following on the Facebook page:

> This is just a suggestion, and any responses are welcome. From what I understand, George ran into difficulties with hosting this page because of what

---

[3] Unfortunately, Sullivan's did not provide a copy of this policy to the Court. Rather, they provided a photograph of the policy that was displayed on a bulletin board in the Indianapolis restaurant. Much of the policy, however, is illegible, even when the photograph is enlarged.

[4] It is unclear to the Court who posted this suggestion.

some people posted and how it was presented at work. I'm thinking we should have the same code as Fight Club. Nobody talks about it. If you swap shifts, both parties call work and say they want to trade shifts. DO NOT mention Facebook. Also, no managers (or spouses or roommates or whatever) or hostess should be members of this group. Managers, because they are required to judge everything. And no hostess, because if they trying to find people to take the cut they go to this page and tell a manager. I love them, but that's what happens. I also like it when people post articles and links here that are relevant to work. I think that should continue. Also we should have a rule about no complaining about work. Discussion anyone?

Dkt. No. 56-1. In response, Moncel said:

I agree . . . but maybe we can make the hostess double swear not to say anything . . . shit . . . who care if they do . . . it will be funny . . . OO a crew that can't be bullied around anymore . . I love it!!! I actually hope they do find out they have been kicked out of the house, and know one wants them on here . . . what will they say!!! Really, look at OSHA and EOE peeps, we have rights:)))

*Id*. Management soon found out about Moncel's post because a Sullivan's hostess, Danielle Black, wrote a letter to management complaining about the Facebook page, and specifically, about Moncel's "negative comment[s]" regarding management. *See id.*

During this time, Sullivan's was already investigating another matter that had been brought to its attention regarding Moncel's employment. On April 8, 2012, a fellow server, Tim Barnes, reported to management that Moncel asked him to wear a wire to secretly tape record conversations with Vanek.[5] As part of its investigation, management received a few statements from Sullivan's employees who had witnessed the conversation between Barnes and Moncel and who generally agreed that Moncel was creating a negative environment among the staff.

On or about April 11, 2012, Stanley reached out to April Scopa, Vice President of People & Education for Del Frisco's Restaurant Group, Inc.—the parent company of Sullivan's— regarding these issues with Moncel's employment. The allegations were as follow:

---

[5] Moncel disputes this. She alleges that it was Barnes who came to her wanting to tape record conversations with Vanek because he felt Vanek was harassing and bullying him.

- Server creating hostile environment/asking other employees to wear wire to tape conversations to be used against Sullivan's

- Stating she has a lawyer involved out of LA who won a $350,000 judgment/claiming Sullivan's fosters a hostile environment/harassment/mistreatment by manager Kim

- Staff has opened facebook page where discussions of hostile environment at Sullivan's are taking place

- Lisa typed on facebook page reference to EEOC and how a hostess is also bullying her – Current Hostess is upset and brought to John's attention

Dkt. No. 58. Scopa, Stanley, and Ray Kasperski[6] together made the final decision to terminate Moncel's employment for "misconduct, such as dishonesty, or conduct which violates common decency or morality." *Id*. Moncel had a meeting with Stanley and Christiansen on April 12, 2012, and was informed that she was being terminated because of the statements they had received from her co-workers alleging that she was creating a negative work environment. Moncel then informed them both that she had been sexually harassed.

Four days later, on April 16, 2012, Moncel filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Her EEOC Charge alleged retaliation and discrimination on the basis of sex. Specifically, she alleged the following:

> I began working for Del Frisco's in July 2010. My last position was Server-Bartender-Food Runner, where John Stanley or Chef Michael Christiansen was my immediate supervisor.
>
> Beginning on or about July 2011 through my termination on April 12, 2012, Tony Last Name Unknown (male/Hispanic) Prep/Cleaner/Cook began to sexually harassment by grabbing and groping my breast and butt, rubbed his penis on my butt almost every shift we worked together. I told Tony on several occasions to stop touching me, and he was going to get into trouble. I have also seen Tony, groping and grabbing another female coworkers, such as Katie Hoskins, server. Tony also made unwanted sexual comments such as "he wanted to taste me" and then said "sweet." I did not complain to management about the sexual

---

[6] The Court is unaware of Kasperski's official position with Sullivan's and/or Del Frisco's Restaurant Group, Inc.

harassment, until I was terminated. However, I did complain to Katie Hoskins, server.

On April 12, 2012, I was called into the office by Mr. Stanley and Mr. Christiansen said I was terminated because 5 people wrote statement stating I harassed them by discussing their EEO rights and OSHA rights as an employee. During the meeting I complained that Del Frisco's had employees that sexual harassment.

I did not harass any employee, but I informed several employees that complained to me about being sexually harassed that there are EEO laws that prohibit the behavior that the employees complained about.

Additionally, I have been informed by Katie Hoskins that management is now informing all the employees to keep their hands to themself.

I believe I have been sexually harassed based on my sex (female) and I have been retaliated against which is in violation of Title VII of the Civil Rights Act of 1984, as amended.

Dkt. No. 1-1. On August 28, 2012, the EEOC issued Moncel a right to sue letter, and she filed this suit against Sullivan's on November 21, 2012.

### III. DISCUSSION

In her Amended Complaint, Moncel brings claims for: 1) hostile work environment; 2) retaliation; and 3) wages under the Fair Labor Standards Act ("FLSA"). Her claims will be addressed, in turn, below.

#### A. Hostile Work Environment

In Count I of Moncel's First Amended Complaint, she alleges that she was subjected to a hostile work environment at Sullivan's because of her gender. "Title VII forbids workplace discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a)(1). One of the ways in which this prohibition can be violated is through sexual harassment that is either severe or pervasive enough to create an abusive working environment." *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009). "To demonstrate a hostile work environment under Title VII, [Moncel]

7

must show that she was subjected to harassment because of her sex, that the harassment was severe or pervasive enough to create a hostile work environment, and that there is a basis for employer liability." *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 993-94 (7th Cir. 2011) (citing *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir. 2006)). The Court will presume for the purpose of this motion that the harassment Moncel experienced was based on her sex, and that it was severe or pervasive enough to create a hostile work environment.[7] To survive summary judgment, therefore, Moncel has to provide evidence that would "allow a jury to reasonably infer a basis for employer liability." *Sutherland*, 632 F.3d at 994.

Moncel correctly identifies that she has to show negligence on Sullivan's part in order for it to be liable for the sexual harassment she experienced at the hands of her co-workers. *See Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 866 (7th Cir. 2013) ("[W]hen a co-worker harasses an employee, the employer is liable only if the employer is negligent in discovering or remedying the harassment.") (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)). The Seventh Circuit has further explained that an employer's

> liability turns on whether [the plaintiff] adequately alerted the company to the problem. Notice that is sufficient to trigger employer liability must be given to either someone with authority to take corrective action or, at a minimum, someone who could reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it. If the employer has established a set of procedures for reporting complaints about harassment, the complainant ordinarily should follow that policy in order to provide notice sufficient for the employer to be held responsible, unless the policy itself is subject to attack as inadequate.

---

[7] Sullivan's argues that Moncel failed to exhaust her administrative remedies with regard certain conduct that allegedly contributed to the hostile work environment, as her EEOC Charge only alleges she was sexually harassed by Tony. For the purpose of this motion, however, the Court will consider all of the facts Moncel alleges that contributed to the hostile working environment. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (noting that the Seventh Circuit does not require that a plaintiff "allege[] in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint").

8

*Id.* (internal citations and quotation marks omitted).  Based on this, Sullivan's argues that it cannot be held liable as it is undisputed that Moncel did not inform management that she was being sexually harassed until she was terminated.

However, Moncel correctly notes in her brief that if Sullivan's had a reason to know of the harassment, despite Moncel's failure to inform them of it, liability can still attach. *See Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1014 (7th Cir. 1997) (noting that because the plaintiff did not complain to management about the harassment before she quit, "[h]er only chance to save her claim . . . would be if [her employer] had reason to know of the harassment on its own."); *see also Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012) ("Dr. Jajeh makes no claim that Cook County had constructive notice of the alleged harassment[.]"); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010) ("Montgomery waived any contention that the alleged racial harassment was *sufficiently obvious* to charge American with knowledge of the conduct.") (emphasis added).  In other words, if Sullivan's had "constructive notice" of the harassment, this would have put it on notice, triggering its obligation to remedy the situation.

In her Response, Moncel first argues that Sullivan's was put on notice of the sexual harassment because of her Facebook post.  The Court disagrees.  At most, the post suggests that Moncel felt bullied; however, a reasonable reading of this post does not lead to the conclusion that Moncel was referring to sexual harassment.  As discussed more fully below, the post does not even mention that Moncel felt bullied because of her sex.  This is insufficient to put Sullivan's on notice that Moncel, or any other female employee, was being sexually harassed.

Next Moncel argues that Sullivan's "had constructive notice of sexual harassment because some management personnel participated in those acts." Response at 3.  In her deposition, Moncel alleged that "[m]anagement seen it happen . . . Kene Young seen sexual

9

harassment and Mike Christiansen seen it." Pl.'s Dep. at 86-87. However, Moncel admitted that besides their own allegedly harassing behaviors, she did not know what other acts of sexual harassment Christiansen and Young observed. *Id.* The Court cannot jump to the conclusion that because these two men allegedly sexually harassed Moncel and/or other female employees, that *Sullivan's* was on constructive notice that sexual harassment was occurring to Moncel.

Finally, the Court gleans from Moncel's Response that she believes that since other female employees had complained about sexual harassment, Sullivan's was on constructive notice that she was being sexually harassed. For example, Katie Hoskins allegedly complained that she was being sexually harassed by Tony, and Danielle Hester complained to Vanek and Christiansen that she was being sexually harassed by two kitchen employees named Sergio and Julio. Had Moncel complained as well, this may indeed have bolstered her claim; however, again, the Court does not believe it would be reasonable for a jury to conclude that because these two employees made isolated complaints about their own sexual harassment that Sullivan's should have known that *Moncel* was also being sexually harassed.

Moncel readily admits that she did not utilize the procedures Sullivan's put into place to remedy sexual harassment. The Seventh Circuit has held "that an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999). Moncel did not give Sullivan's actual notice of the harassment, and neither was it on constructive notice of the sexual harassment. Accordingly, the Court finds that no

reasonable jury could find Sullivan's negligent, and accordingly, **GRANTS** its summary judgment motion with respect to Moncel's hostile work environment claim.[8]

### B. Retaliation

Moncel next argues that Sullivan's retaliated against her by terminating her employment "for discussing EEOC rights with other disgruntled co-workers regarding sexual harassment, bullying, intimidation, and hostile working conditions." Response at 5. In her Response, Moncel correctly notes that she can prove her retaliation claim using either the direct or indirect method of proof. However, under either method of proof, she has to first demonstrate that she engaged in protected activity: the Seventh Circuit has noted, "[i]t is axiomatic that a plaintiff [must] engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity. . . . An employer cannot retaliate if there is nothing for it to retaliate against." *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003). The Court gleans two alleged instances in which Moncel argues she engaged in protected activity: 1) her Facebook post; and 2) her discussions with other female employees.

As discussed above, Moncel's Facebook post, at most, suggests that she felt she was being bullied; however, a reasonable reading of this post does not lead to the conclusion that she felt she was being bullied because of her sex. It is well-settled that in order to engage in protected activity, "the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of

---

[8] With respect to her hostile working environment, much of Moncel's Response is dedicated to the five written warnings she received over the course of her employment. She argues that "[t]he disciplinary write ups show, a form of causal connection, bullying, and intimidation." Response at 7. However, Moncel has failed to illustrate that the warnings she received had anything to do with her sex, and therefore they are not relevant to her hostile work environment claim brought pursuant to Title VII. She may disagree with them or feel they were unreasonable responses to the situation, but this does not support her claim that she was harassed because of her sex to the point that it created a hostile work environment.

discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Simply mentioning "OHSA and EOE" also does not transform this post into protected activity—Moncel simply did not make a complaint that she felt she was being "bullied" because of her sex, and as such, she did not engage in protected activity.

Contrary to Moncel's arguments, this is supported by Scopa's e-mail and declaration regarding the reasons for Moncel's termination. Scopa's e-mail, listing the reasons Moncel should be terminated, states in part:

- Claiming Sullivan's fosters a hostile environment/harassment/mistreatment by manager Kim

- Staff has opened facebook page where discussions of hostile environment at Sullivan's are taking place

- Lisa typed on facebook page reference to EEOC and how a hostess is also bullying her – Current Hostess is upset and brought to John's attention

Completely absent from this is any reference to *unlawful* harassment and/or mistreatment, i.e. that Moncel was claiming Sullivan's fostered an environment that discriminated against her on the basis of her sex. Further, Scopa's declaration states the following: "When I made the recommendation to terminate Moncel, I was not aware of any complaint by her that she was being sexually harassed, discriminated against based upon her sex, or that she was otherwise complaining about any such harassment or discrimination in her Facebook post to her co-workers." Dkt. 56-1. Because Moncel did not make any reference to *unlawful* harassment and/or bullying in her Facebook post, she did not engage in any protected activity for which Sullivan's could retaliate against her.

Turning to her second alleged form of protected activity, Moncel alleges that she discussed the sexual harassment that was occurring at Sullivan's with fellow employees. Moncel

12

has directed the Court to no case law supporting the fact that simply engaging in conversations with coworkers regarding their rights is protected activity, and the Court is not otherwise aware of any. Nevertheless, even assuming this was protected activity, there is no indication that Sullivan's was aware that these discussions were occurring:

> Q: Did you tell other employees about Title VII?
>
> . . .
>
> A: When they [her co-workers] would come up to me at work and complain about issues, I would say "You have rights. You can go read that poster up there that they've got posted. There's an OSHA poster and there's an EEOC poster, or you can get online. I have been researching. I know that they are in violation of several offenses and this is wrong. Go talk to management." I was hoping they would get it straightened out and I wouldn't have to be the one to go tell.
>
> . . .
>
> Q: But to your knowledge did anyone tell management that you had told them to do that?
>
> A: No, not to my knowledge.

Pl.'s Dep. 234-35. "Usually a claim for retaliation is preceded by an obligatory complaint about discriminatory conduct, so that the employer is aware of the mistreatment and the corresponding protected activity." *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). If Moncel did not engage in any protected activity for which Sullivan's knew about, it is impossible to claim that it retaliated against her for engaging in that protected activity. Accordingly, Sullivan's motion for summary judgment is **GRANTED** on Moncel's retaliation claim.

### C. FLSA Claim

Finally, Count III of Moncel's First Amended Complaint assert a FLSA claim against Sullivan's, claiming that "in many instances [she] did not receive the proper allocation of tips received from patrons when working in certain positions covered by the Sullivan's tip-sharing

13

policy, and in some cases [] was allocated no tips at all." Complaint ¶ 49. Sullivan's denies any obligation to monitor the tip pool system and argues that it only had an obligation to pay its employees the minimum wage established under the FLSA. The Court agrees.

The FLSA establishes a minimum wage that employers must pay their employees; however, § 203(m) of the FLSA permits employers to pay less than minimum wage to those employees who regularly receive tips as part of their job. This is known as a "tip credit."[9] In order to take the tip credit the following conditions must be satisfied: (1) the employer must notify the employee of the plan; and (2) "all tips received by such employee [must be] retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Thus the FLSA still allows employers to utilize a "tip pool" whereby servers share a percentage of their tips with certain eligible employees, including hosts, bussers, and food runners. At all times relevant to this cause, Sullivan's took a tip credit when paying Moncel and utilized a tip pool.

Moncel did not address this claim in her Response and has directed the Court to no case law supporting a "monitoring" duty on behalf of employers with respect to the tip pool; the Court is not otherwise aware of any. While Sullivan's certainly had a duty to pay Moncel the minimum wage—whether it took a tip credit or not—Moncel has not alleged that she was not paid minimum wage for all hours worked; her only allegation is that sometimes she did not receive the full amount of tips owed to her pursuant to Sullivan's tip pool policy. Even accepting this as true, Moncel has failed to show a violation of the FLSA. Accordingly, summary judgment is **GRANTED** on Count III of her Complaint. *See Johnson v. Cambridge*, 325 F.3d

---

[9] For example, Sullivan's was required to pay Moncel the federal minimum wage of $7.25; however, because she received tips as part of her job, Sullivan's only paid her $2.13 per hour, taking $5.12 as a tip credit.

892, 901 (7th Cir. 2003) ("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, Sullivan's motion for summary judgment (dkt. no. 49) is **GRANTED**.

SO ORDERED: 05/13/2014

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Lisa R. Moncel**
**1916 North Routiers Avenue**
**Indianapolis, IN 46219**

Copies to all counsel of record via electronic communication